UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ECOGEN, LLC,

                              Plaintiff,

                                                                                                   DECISION AND ORDER

                                                                                                       06-CV-6196L

                                v.

TOWN OF ITALY, et al.,


                                Defendants.
_____


        The development of wind power projects, which convert wind energy into electricity, seems to be on the upswing in this country, but that growth has not been universally welcomed. *See, e.g.*, Felicity Barringer, *Debate Over Wind Power Creates Environmental Rift*, N.Y. Times, June 6, 2006, at A18. As in *Don Quixote*, where one person sees a windmill, another sees a "monstrous giant" looming over the countryside.[1] This case involves one such proposed project that has met with local opposition.

---

    [1]    At this point they came in sight of thirty or forty windmills that are on that plain, and as soon as Don Quixote saw them he said to his squire, "Fortune is arranging matters for us better than we could have shaped our desires ourselves, for look there, friend Sancho Panza, where thirty or more monstrous giants present themselves, all of whom I mean to engage in battle and slay ... ."

Miguel de Cervantes Saavedra, Don Quixote, pt. 1, ch. VIII (John Ormsby, trans.), *available at* http://www.online-literature.com/cervantes/don_quixote/.

Plaintiff, Ecogen, LLC ("Ecogen"), commenced this action under 42 U.S.C. § 1983, seeking relief from a moratorium ("the Moratorium") enacted by the Town of Italy (N.Y.) Town Board ("the Board"), which, for the duration of the moratorium prohibits the "construction or erection of wind turbine towers, relay stations and/or other support facilities in the Town of Italy." Ecogen has moved for an order preliminarily enjoining defendants from enforcing or continuing the Moratorium insofar as it relates to the construction and operation of an electrical substation within the Town of Italy. Defendants, who include the Town of Italy ("the Town" or "Italy"), the Town supervisor, and the Board, have moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

Ecogen is an independent power producer engaged in the development of wind-energy projects (sometimes referred to as "wind farms") in New York State. Wind farms produce electrical energy through the use of wind turbines, which are windmill-like structures that use a wind-driven rotor mounted on a tower to create electricity through the use of a generator. According to plaintiff, only certain types of areas are suitable for the construction of wind farms. In particular, wind farms should ideally be located in areas with strong winds and nearby electrical transmission lines.

In 2001, Ecogen identified certain ridge tops in the contiguous Towns of Prattsburgh and Italy as viable spots for wind energy projects ("the Prattsburgh Project" and "the Italy Project"). Ecogen determined that it would be feasible to build about 30 wind turbines in Prattsburgh, and another 23 in Italy. None have been built to date.

One important feature of these ridge tops is their proximity to an electrical transmission line that runs, in part, through Italy. For the project to succeed, in either Prattsburgh or Italy, a substation would have to be built to connect with that line, and according to plaintiff, the best location for the substation, from an engineering standpoint, would be somewhere in Italy. Plaintiff states that the

substation would be roughly 150 feet square, surrounded by a fence of about 200 by 300 feet, noiseless, and would be set well back from the nearest road or other property. Apparently, the chosen site is about one mile from the Italy-Prattsburgh town line.

In anticipation of the Prattsburgh and Italy Projects, Ecogen has acquired property rights and easements to an assemblage of properties in both towns. The Town of Prattsburgh has allegedly welcomed the Prattsburgh Project, and Ecogen has been proceeding with that project, but it cannot be completed until the substation is built.

The Town of Italy Board was apparently less receptive to the project for that town, however. On June 8, 2004, the Board passed a "local law Establishing a Moratorium on Construction or Erection of Wind Turbine Towers, Relay Stations and/or other support facilities in the Town of Italy." Dkt. #11 Ex. D. The stated purpose of the Moratorium is to prohibit the construction of such structures "for a reasonable time pending the completion of a plan for control of construction of such structures in the Town of Italy as part of the adoption of comprehensive zoning regulations ... ." *Id.* § 3(A). The Board also stated that it took this action "to protect the value, use and enjoyment of property in the Town" by its citizens. *Id.* § 3(B). Specifically, the Board stated that "a principal concern is the scenic and aesthetic attributes of the Town of Italy as they relate to the use of land in the Town for residential, recreational and tourism purposes," and that "the installation of wind turbine facilities in the Town of Italy may have an adverse affect [sic] upon the scenic and aesthetic attributes of the Town of Italy and a correspondingly detrimental influence upon residential and recreational uses as well as real estate values in the Town of Italy, unless properly controlled through zoning regulations." *Id.* § 3(C).

To fulfill these stated objectives, the Board decreed that "[f]or a period of six (6) months from and after the effective date of this Local Law, no construction or erection of wind turbine towers, relay stations and/or support facilities shall be permitted within the geographical limits of the Town of Italy," nor could any permits for such facilities be filed during that period. *Id.* § 4. The Moratorium became effective upon its filing with the New York Secretary of State on June 15, 2004. *Id.* at 1.

The Moratorium also contains a provision, entitled "Alleviation of Extraordinary Hardship," which provides that the Board "may authorize exceptions to the moratorium imposed by this Law when it finds, based upon evidence presented to it, that deferral of action on an application for facility construction, or the deferral of approval of the application for the duration of the moratorium would impose an extraordinary hardship on a landowner or applicant." *Id.* § 5(A). To apply for such an exception, the applicant must pay a fee of $500, together with a recitation of the relevant facts and supporting documentation. A public hearing on the application is to be held by the Board "no later than forty-five (45) days after the complete application for hardship exception has been filed with the Town Clerk." *Id.* § 5(C). The Moratorium provides that "[a]t the conclusion of the public hearing and after reviewing the evidence and testimony placed before it, the Town Board shall act upon the application," but it does not provide a time period within which the Board must issue a decision. *Id.* § 5(E).

As stated, the original duration of the Moratorium was six months. However, the Board has renewed the Moratorium several times since its original passage. It most recently did so on March 29, 2006, Dkt. #24 Ex. A, and the Moratorium, which has now been in effect for about two years, is currently scheduled to expire–if it is not again renewed–in October 2006.

Because of the Moratorium, then, Ecogen has been unable to erect any wind turbines or related facilities within the Town of Italy, including the substation. Ecogen claims that this is holding up not only the Italy Project but also the Prattsburgh Project, which requires completion of the substation. Ecogen also contends that it has been unable to take certain procedural steps that are necessary to both projects (such as the completion of environmental impact studies), and that it is in jeopardy of losing certain tax credits, which are contingent upon the Prattsburgh Project's completion by December 31, 2007.

Ecogen has not applied for a hardship exception as provided for in the Moratorium, but through its attorneys it has written a number of letters to various Town officials objecting to the inclusion of the substation in the Moratorium. *See* Dkt. #11 Ex. F; Dkt. #30 Ex. B. These letters generally set forth Ecogen's position that, given the aesthetic concerns that were the stated impetus

behind the Moratorium, there was no rational reason to include the relatively unobtrusive, and also explained the adverse consequences to Ecogen of not being able to proceed with the construction of the substation in Italy. All these letters went unanswered.

Ecogen commenced this action on March 29, 2006. The complaint purports to assert six causes of action. The first alleges that defendants have deprived plaintiff of due process of law, in violation of the Fourteenth Amendment to the United States Constitution, by enacting and perpetuating the Moratorium, especially as it relates to the substation, thereby denying plaintiff the "use of property based on an illegal, irrational and unconstitutional motivation." Complaint ¶ 58. The second cause of action seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that the Moratorium is unconstitutional or otherwise unenforceable. The third cause of action alleges a "violation of 42 U.S.C. § 1983." The fourth cause of action seeks injunctive relief, and the final two causes of action assert claims under state law.[2]

## DISCUSSION

**I. Defendants' Motion to Dismiss**

**A. Facial or As-Applied Challenge?**

As stated, defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The basis for the Rule 12(b)(1) motion is defendants' contention that plaintiff's claims are not ripe for adjudication, because Ecogen has not obtained a "final decision" from the Board concerning the application of the Moratorium to the construction of the substation.

---

[2]The Court of Appeals for the Second Circuit has held that "there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the [municipality] under § 1983." *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir. 1979) (per curiam); *accord Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)); *Dix v. City of New York*, No. 01 CIV. 6186, 2002 WL 31175251, at *9 (S.D.N.Y. Sept. 30, 2002). Thus, the first cause of action essentially merges into plaintiff's claim under § 1983. *See Hughes v. Bedsole*, 48 F.3d 1376, 1383 n. 6 (4th Cir.), *cert. denied*, 516 U.S. 870 (1995).

In order for claims to be justiciable under Article III, the controversy must first be ripe. *See Marchi v. Board of Coop. Educ. Servs. of Albany*, 173 F.3d 469 at 478 (2d Cir. 1999) ("ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts") (internal quotations omitted). "[W]here the dispute involves administrative and zoning regulations, the ripeness doctrine restrains courts from entangling themselves in abstract disagreements over policies, freeing agencies from judicial interference until an actual administrative decision has been formulated and its effects concretely realized." *Kittay v. Giuliani*, 112 F.Supp.2d 342, 348 (S.D.N.Y. 2000) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-9 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977), and *Pennell v. City of San Jose*, 485 U.S. 1, 10 (1988)), *aff'd*, 252 F.3d 645 (2d Cir. 2001) (per curiam).

Applying the ripeness requirement, courts have held that, in the absence of a final decision by the government entity charged with implementing a statute or regulation governing property use, a plaintiff's "as applied" challenge to that statute or regulation is generally not ripe for consideration. *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186-88 (1985); *Rye Psychiatric Hosp. Center, Inc. v. Shalala*, 52 F.3d 1163, 1172 (2d Cir. 1995). "This stems naturally from the requirement of 'application' to a particular piece of property in as-applied challenges. A statute or regulation cannot be applied to a particular piece of property until it goes into effect." *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1357 (Fed. Cir. 2002).

Furthermore, where the application of a statute or regulation is discretionary, "a final decision adverse to the property holder is required to create a ripe claim." *Id.* (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 187 (1985)). Typically, that means that the plaintiff must have submitted at least one application for, and been denied, permission for the proposed structure or use of the subject property. *See, e.g., Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 191 (1985); *Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir. 1994); *Kittay*, 112 F.Supp.2d at 350.

In contrast, facial challenges to legislative acts "are ripe by their very nature." *Kittay*, 112 F.Supp.2d at 350; *see also Brubaker Amusement*, 304 F.3d at 1358 ("facial challenges ... are ripe as

of the enactment of the rule"). As the Supreme Court has stated, however, "[a] facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *See also Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n. 10 (facial challenges "face an 'uphill battle'"); *National Abortion Fed'n v. Gonzales*, 437 F.3d 278, 293 (2d Cir. 2006) ("The standard for a 'facial challenge' ... is much more onerous" than that for an as-applied challenge).

Here, Ecogen contends that it is challenging the Moratorium on its face. Ecogen contends that defendants abused their police powers by enacting the Moratorium for an improper purpose, thereby depriving all wind farm developers of due process, not just Ecogen. In particular, according to plaintiff, there is simply no valid reason for a moratorium on all wind power substations, when other types of substations are permitted. Alternatively, plaintiff argues that even if it were challenging the Moratorium as applied, its claim is ripe because, given the Board's overt hostility to the Italy Project, it would be futile for Ecogen to seek the Board's permission to build the substation.

Defendants contend that, Ecogen's assertions to the contrary notwithstanding, an examination of the allegations in the complaint shows that plaintiff is in fact challenging the Moratorium as applied to Ecogen. Specifically, defendants argue, plaintiff is alleging that the particular characteristics of Ecogen's proposed substation–such as its size and location–render it safe, unobtrusive, and generally unobjectionable. Defendants assert that plaintiff's claim is not ripe because Ecogen has not sought a hardship exception under the Moratorium, and there has thus been no final decision with respect to the proposed substation.

There is no reason why a challenge to the constitutionality of an ordinance has to be either facial *or* as-applied, but not both. Plaintiffs frequently challenge legislative acts both on their face and as applied. *See, e.g., Board of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 827 (2002); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 160 (1997). Rather than attempt to pigeonhole plaintiff's claim at the outset, then, it makes more sense to analyze whether plaintiff has stated a viable claim under either theory.

Since the final-decision requirement does not apply to facial challenges, *see County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006); *Southern Pacific Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 507 (9th Cir. 1990), *cert. denied*, 502 U.S. 943 (1991); *Parkview Homes, Inc. v. City of Rockwood*, No. 05-CV-72708, 2006 WL 508647, at *10 (E.D.Mich. Feb. 28, 2006), and the parties dispute whether plaintiff can satisfy that requirement here, I begin by considering plaintiff's facial challenge to the Moratorium. If the Moratorium is facially invalid, it will be unnecessary to determine whether plaintiff has shown that it would be futile to seek a hardship exception, thus satisfying the finality requirement.

**B. Facial Challenge**

Plaintiff alleges that insofar as the Moratorium relates to the proposed substation, defendants' actions in passing and renewing the Moratorium have denied plaintiff the use of property without due process of law, in violation of the Fourteenth Amendment. Defendants respond that the Moratorium is a valid exercise of the Town's police and zoning powers.[3]

In the context of land use regulation, the constitutional guarantee of substantive due process protects a person with an interest in property from arbitrary or irrational governmental action depriving the person of that interest. *Brady v. Town of Colchester*, 863 F.2d 205, 215 (2d Cir. 1988); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F.Supp.2d 455, 461 (E.D.N.Y. 2002). In order to prevail on its substantive due process claim, Ecogen must establish that the Moratorium, at least insofar as it prohibits Ecogen's construction of a substation, bears no rational relationship to any legitimate governmental purpose. *Richardson v. Township of Brady*, 218 F.3d 508, 513 (6th Cir.

---

[3]Although defendants initially took the position that Ecogen had not identified a protected property interest, *see Brady v. Town of Colchester*, 863 F.2d 205, 211-12 (2d Cir. 1988) (to state a claim under Fourteenth Amendment for deprivation of property without due process of law, person must establish that he had valid, protectible property interest of which he was deprived), *citing Board of Regents v. Roth*, 408 U.S. 564, 576-77 (1972)), plaintiff has provided evidence that Ecogen has exercised an option to purchase property in Italy where it would like to build a substation. *See* Dkt. #11 at 36-39, Dkt. #32 ¶ 5. The exercise of an option to purchase does give rise to a protected property interest, *see In re Prudence Bonds Corp.*, 79 F.2d 212, 216 (2d Cir. 1935); *In re Water Front on Upper New York Bay, in Borough of Richmond, City of New York*, 246 N.Y. 1, 33 (1927); *United Skates of America, Inc. v. Kaplan*, 96 A.D.2d 232, 237 (2d Dep't 1983), and defendants do not now appear to dispute that plaintiff does have such an interest.

2000); *Orange Lake Associates, Inc. v. Kirkpatrick*, 21 F.3d 1214, 1225 (2d Cir. 1994); *Bannum, Inc. v. City of St. Charles, Missouri*, 2 F.3d 267, 270 (8th Cir. 1993); *Kittay*, 112 F.Supp.2d at 352.[4]

In undertaking that analysis, the Court is mindful that "federal courts are not to be turned into zoning boards of appeals," *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *accord Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001). Nevertheless, if a property owner's constitutional rights are infringed by a municipality's actions, the Court's "duty to protect the constitutional interest is clear." *Brady*, 863 F.2d at 215 (quoting *Sullivan v. Town of Salem*, 805 F.2d 81, 82 (2d Cir. 1986)).

As stated, facial challenges are difficult to mount successfully, and that holds true in the context of zoning and land use regulation as well. "Generally a municipal zoning ordinance is presumed be valid, and will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective." *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir. 1989) (citing *see City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)). In applying those principles here, defendants' subjective motivation in enacting the Moratorium is irrelevant. *United States v. Carlton*, 512 U.S. 26, 36-37 (1994) (O'Connor, J., concurring); *Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 439 (4th Cir. 2002); *Homar v. Gilbert*, 89 F.3d 1009, 1029-30 (3d Cir. 1996) (Alito, J., concurring in part and dissenting in part), *rev'd on other grounds*, 520 U.S. 924 (1997).

While the Court certainly may consider whether the Moratorium is rationally related to its stated purpose, *see, e.g.*, *Ultimate Custom Cycles, Inc. v. Town of Greenburgh*, No. 98 CIV. 5914, 1999 WL 135201, at *8 (S.D.N.Y. Mar. 11, 1999), that is ultimately not determinative, and in fact it is not necessary for defendants to enunciate *any* purpose for the Moratorium. *See Panama City*

---

[4] Although framed in terms of substantive due process, Ecogen's claim also has some characteristics of an equal protection claim, since it is based in part on the fact that defendants have not prohibited the construction of *all* substations and other electric power facilities, but only those for use in wind power projects. The tests under the Equal Protection Clause and for purposes of substantive due process are essentially the same, however. *See Berger v. City of Mayfield Heights*, 154 F.3d 621, 624 (6th Cir. 1998); *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1214 n. 6 (11th Cir. 1995); *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir. 1993).

*Medical Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1546 (11th Cir. 1994) ("Because legislatures are not required to articulate reasons for the enactment of a statute, 'it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature'") (quoting *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)) (footnote omitted). Instead, "the proper inquiry is concerned with the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body." *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995) (citation omitted); *see also Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999) ("we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did"), *cert. denied*, 530 U.S. 1261 (2000); *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070-71 (8th Cir. 1997) (plaintiff's allegation that defendant zoning board's decision to place restrictions on plaintiff's asphalt plant permit was motivated by personal animus was insufficient to support substantive due process claim, since board had "rational bases" upon which to restrict permit); *WMX Technologies, Inc. v. Gasconade County, Missouri*, 105 F.3d 1195, 1201 (8th Cir. 1997) ("In adjudicating facial substantive due process challenges to a zoning or land use ordinance, we do not inquire into the methods and motives behind its passage. We ask only whether a conceivable rational relationship exists between the ordinance and legitimate governmental ends"). Plaintiff thus has the heavy burden "to negative every conceivable basis which might support" the Moratorium. *Heller v. Doe*, 509 U.S. 312, 320 (1993).[5]

---

[5] Though the Moratorium is not, strictly speaking, a "zoning" ordinance (since Italy has no zoning plan in place as yet), it is functionally similar to a zoning ordinance, *see Sagamore Park v. City of Indianapolis*, 885 F.Supp. 1147, 1150 (S.D.Ind. 1994) (town moratorium on off-track betting facilities was "an act of zoning"). In any event, as an exercise of the Town's police power, it is also subject to a presumption of validity and to rational-basis review. *See Bibb v. Navajo Freight Lines*, 359 U.S. 520, 529 (1959) (exercise of police power is presumed to be constitutionally valid); *Empire State Restaurant and Tavern Ass'n, Inc. v. New York State*, 360 F.Supp.2d 454, 460 (N.D.N.Y. 2005) ("there is a strong presumption of validity for a statute passed pursuant to state or local police power"); *Jamaica Ash & Rubbish Removal Co., Inc. v. Ferguson*, 85 F.Supp.2d 174, 188 (E.D.N.Y. 2000) ("simple exercises of general police powers" are "presumptively valid"); *Sanitation and Recycling Industry, Inc. v. City of New York*, 928 F.Supp. 407, 412 (S.D.N.Y. 1996) ("there is a strong presumption of validity of a statute passed under a state or local government's police power, and parties attacking such statutes on constitutional grounds carry a heavy burden") (citation omitted). *See also WMX Technologies*,
(continued...)

Applying these standards to the case at bar, I find that plaintiff has not stated a valid claim that the Moratorium is invalid on its face. Whatever its shortcomings, I am not able to say that it is so arbitrary or irrational as to violate plaintiff's substantive due process rights. *See County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006) (judicial "invalidation of [zoning] legislation for 'irrationality' or 'arbitrariness,' is proper only if the governmental body could have had no legitimate reason for its decision") (quoting *Phillips v. Borough of Keyport*, 107 F.3d 164, 186 (3d Cir.) (Alito, J., concurring and dissenting), *cert. denied*, 522 U.S. 932 (1997)); *Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001) (to show that zoning board's denial of plaintiff's application for special use permit violated plaintiff's right to substantive due process, plaintiff must show that it had valid property interest in the granting of the permit, and that defendants infringed that property interest in an arbitrary or irrational manner).

First, I note that, at least for purposes of the pending motions, plaintiff does not appear to dispute that in general the Town has an interest in preserving its aesthetic character. *See, e.g., Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 645 (2d Cir. 1999) ("Aesthetics is generally a valid subject of municipal regulation and concern"); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 495 ("In New York, aesthetics can be a valid ground for local zoning decisions"). Plaintiff contends, though, that the modest substation presents no aesthetic concerns.

The question, then, is whether the Moratorium's prohibition of the construction of "wind turbine towers, relay stations and/or other support facilities" is rationally related to that interest. Again, I am unable to say that it is not. Assuming that the Town has a legitimate concern in restricting the construction of wind towers, the Moratorium is not completely irrational. If the aim is to prevent wind towers from being built in Italy, certainly it makes some sense to prohibit the construction of wind tower support facilities, such as substations, as well.

---

[5](...continued)
105 F.3d at 1199 n. 4 (district court properly applied "truly irrational" standard–*i.e.*, same standard applied to zoning laws–to county's enactment of ordinance; although county had no zoning authority or plan, it acted pursuant to its statutory authority, and there is no significant difference between land use regulations enacted pursuant to zoning plan and those enacted pursuant to other authority). Cases dealing with zoning ordinances are therefore relevant here as well.

Plaintiff's contention that the substation itself would have no adverse aesthetic impact, and that it makes no sense to single out substations related to wind power projects, therefore miss the mark. Prohibiting the construction of wind power substations is not an end in itself, but a means to an end: prohibiting (for the duration of the Moratorium, a matter which is further discussed below) the construction of wind farms in Italy.

It may be that defendants' means of attaining that end are not the most efficacious, wisest or fairest possible, but that is not the standard by which they are to be judged by this Court, especially at this stage of the litigation. *See Heller v. Doe*, 509 U.S. 312, 319 (1993) ("A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality") (internal quotation marks omitted); *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 123 (2d Cir. 2000) (legislative acts "need not result in the most just or logical result in every case to pass constitutional muster"); *Richmond Boro Gun Club, Inc. v. City of New York*, No. 92 CV 0151, 1995 WL 422014, at *2 (E.D.N.Y. Feb. 23, 1994) ("In a challenge to a law's rationality, the court is precluded from weighing the wisdom, need, or utility of the law," and "is also not allowed to speculate on a better method for remedying the problems sought to be regulated").

Courts "will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, because the problem could have been better addressed in some other way, or because the statute's classifications lack razor-sharp precision." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) (citations omitted).[6] "This is the standard of review

---

[6]The Court recognizes that *Beatie* involved a challenge to "social legislation"–an anti-smoking ordinance–that "d[id] not interfere with fundamental rights or single out suspect classifications ... ." 123 F.3d at 711-12. Though the Moratorium does implicate plaintiff's property rights, it does not implicate any fundamental constitutional rights, and is nonetheless subject to the same rational-basis review as the ordinance in *Beatie*. *See, e.g., Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (applying rational-basis test to § 1983 claim against town arising out of denial of building and zoning permits required to develop plaintiff's property); *see also Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006) (stating that plaintiff's argument that city zoning ordinance that restricted where firearms dealerships could operate violated Due Process Clause because it effectively eliminated the ability of firearms dealerships to relocate within city limits "does not touch on a fundamental right or liberty interest"); *Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (because property interests are not created by the Constitution, but by existing rules or understandings that stem from an independent source such as state law, plaintiff could not
(continued...)

because the judicial system has long recognized that '[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific.'" *Rojas-Reyes*, 235 F.3d at 124 (quoting *Heller*, 509 U.S. at 321).

As the Second Circuit has explained,

> [s]ubstantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

*Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). *See also County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (stating that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense") (citation and internal quotation marks omitted); *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir.) ("Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983") (citation omitted), *cert. denied*, 488 U.S. 956 (1988).

In support of its position, Ecogen cites New York case authority to the effect that a municipality may exercise its police power only where there is a "dire necessity" to act and where the municipality's actions are "reasonably calculated to alleviate or prevent the crisis condition." *See Matter of Belle Harbor Realty Corp. v. Kerr*, 35 N.Y.2d 507, 512 (1974). That may indeed be the law of New York, but it is not the test for determining whether one's due process rights under the United States Constitution have been violated. *See Harlen Associates*, 273 F.3d at 505 (stating that plaintiff's "arguments rely heavily on New York cases arising out of Article 78 appeals of local zoning decisions which raise no federal constitutional issue"); *Natale*, 170 F.3d at 262 ("Arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will

---

⁶(...continued)
premise substantive due process claim directly on city's denial of its state-granted and -defined property right in land-disturbance permit).

offend the substantive component of the Due Process Clause"). I believe, therefore, that plaintiff's facial challenge must fail.

**C. As-Applied Challenge**

As stated, plaintiff expressly contends in its Reply Memorandum that it is *not* challenging the Moratorium as applied to Ecogen. The complaint, though, and the arguments advanced against the Moratorium can reasonably be read as raising an as-applied challenge. To the extent that plaintiff's claim could be so construed, however, I find that it is not ripe for review.

Ripeness typically requires the property owner to have submitted "at least one meaningful application for a variance" or other exemption from the challenged ordinance. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005). Here, Ecogen argues that, should the Court construe its claim as an as-applied challenge, the ripeness requirement has been satisfied, notwithstanding Ecogen's failure to apply for a hardship exception, because it would be futile for Ecogen to do so.

I am not persuaded by that assertion. It is true that the ripeness doctrine "does not require [plaintiff] to jump through a series of hoops, the last of which it is certain to find obstructed by a brick wall," *Triple G Landfills v. Board of Commissioners of Fountain County, Indiana*, 977 F.2d 287, 291 (7th Cir. 1992), but the presence of that "brick wall" must be all but certain for the futility exception to apply. There must be evidence that the relevant governmental body has no discretion to grant an exemption, or that it "has dug in its heels and made clear that all such applications will be denied." *Murphy*, 402 F.3d at 349. *See also Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005) (describing the futility exception as "narrow"); *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir.) (stating that "a sort of inevitability is required: the prospect of refusal must be certain" for futility exception to apply), *cert. denied*, 502 U.S. 866 (1991); *White Mtn. Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988) (stating that "administrative review may be futile by virtue of a preannounced decision" by the decisionmaker).

Here, it may be unlikely that defendants would grant Ecogen a hardship exception from the Moratorium, since it was apparently Ecogen's Italy Project that prompted defendants to adopt the Moratorium in the first place. There is obviously some hostility toward the project among some in the town. That the availability of such an exception is doubtful is not enough, however. *See Manufactured Home Communities*, 420 F.3d at 1035 ("mere uncertainty does not establish futility"). Likewise, plaintiff's allegations that defendants are hostile to the Italy Project do not suffice to establish futility. *See Goldfine v. Kelly*, 80 F.Supp.2d 153, 160 (S.D.N.Y. 2000) (plaintiff's allegation that city officials were hostile to his proposed development and conspired to prevent him from continuing development project were insufficient to establish futility). Even if defendants are antipathetic to the project, it is not so clear that they would never grant a hardship exception to allow Ecogen to at least build a substation in Italy to service the Prattsburgh project as to show that it would be futile for Ecogen to apply for such an exception. Perhaps an automatic, unreasoned, knee-jerk denial of such an application may be grist for future litigation, but this claim is not appropriately before me now.

### D. Duration of the Moratorium

Although I find that the Moratorium is facially valid, and that Ecogen's as-applied challenge to the Moratorium is not yet ripe, I also recognize that to pass constitutional muster, a moratorium must be of reasonable duration, and that at some point, a so-called "moratorium" can amount to an unconstitutional taking or violation of a property owner's due process rights. *See Bronco's Entertainment, Ltd. v. Charter Tp. of Van Buren*, 421 F.3d 440, 453 (6th Cir. 2005) (upholding moratorium on submission of rezoning petitions in part because moratorium "was of a reasonably short duration"); *ASF, Inc. v. City of Seattle*, 408 F.Supp.2d 1102, 1108-09 (W.D.Wash. 2005) (finding seventeen-year moratorium on issuance of new adult entertainment licenses unconstitutional); *Q.C. Constr. Co. v. Gallo*, 649 F.Supp. 1331, 1337 (D.R.I. 1986) (noting that "[a]pproved moratoriums have also been either temporary or of reasonable or limited duration")

(collecting cases), *aff'd*, 836 F.2d 1340 (1st Cir. 1987). A municipality may not use a "moratorium" as a *de facto* means of achieving a desired legislative purpose.

Whether a given moratorium is unreasonably lengthy depends upon the surrounding circumstances. In land use cases, the critical question is often how much time the municipality needs to study the situation before it and develop a comprehensive zoning plan or other response to the situation. *See, e.g., Phillips v. Borough of Keyport*, 107 F.3d 164, 181 (3d Cir. 1997) ("if a public official authorized by local law to impose a moratorium on the issuance of permits imposed such a moratorium for the purpose of allowing the municipality a reasonable opportunity to consider whether the secondary effects of adult entertainment uses required additional zoning regulation, any resulting delay could not constitute a substantive due process violation"); *Q.C. Constr.*, 649 F.Supp. at 1337 ("Moratoriums have been approved when they form a part of a comprehensive plan to remedy a problem situation"); *Smoke Rise, Inc. v. WSSC*, 400 F.Supp. 1369, 1383 (D.Md. 1975) (reasonableness of sewer moratoria was to be judged by their purpose and duration).

There is, then, no bright-line rule as to how long a moratorium can remain in effect without treading upon constitutional rights, *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 342 (2002). Though the Supreme Court has commented that "[i]t may well be true that any moratorium that lasts for more than one year should be viewed with special skepticism," *id.* at 341, it also held in *Tahoe-Sierra* that a thirty-two-month moratorium on development was not such an extraordinary delay as to amount to a compensable taking. *Id.* at 341-42. Under the circumstances here, it does seem curious and suspicious that a two-year period is needed to adopt a zoning plan for wind turbines.

In the case at bar, defendants contend that the moratorium is needed to maintain the status quo while the Town, which has no comprehensive zoning plan, develops such a plan. They also contend that they are nearing completion of that plan, and that it will likely be issued in the near future. At oral argument on this motion, counsel for the Town represented that the moratorium should end in October, 2006.

Plaintiff asserts that it has heard such promises before. Plaintiff claims that further delay in construction of the substation will jeopardize Ecogen's chances of obtaining millions of dollars in tax credits, which are contingent upon the Prattsburgh Project being completed no later than December 31, 2007. In that regard, I note that there is some authority that significant hardships occasioned by governmental delay in acting can warrant judicial intervention, even if the plaintiff has not obtained a final decision on its application. *See Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991) ("There may be a further facet of the futility exception, applicable where the degree of hardship that would be imposed by waiting for the permit process to run its course is so substantial and severe, and the prospects of obtaining the permit so unlikely, that the property may be found to be meaningfully burdened and the controversy concrete enough to warrant immediate judicial intervention").

Mindful of the competing interests of the Town in preserving the status quo pending completion of a comprehensive zoning plan, and of Ecogen in obtaining a prompt decision on its proposal to build a substation in Italy to service its project in Prattsburgh, I deny plaintiff's motion for a preliminary injunction at this time, but with the added provision that defendants must either: (1) enact a comprehensive zoning plan within ninety days of the date of issuance of this Decision and Order; or (2) render a decision on plaintiff's application for a hardship exception within ninety days of its filing. If defendants fail to do either of these things, plaintiff may again seek injunctive relief in this Court.

## CONCLUSION

Plaintiff's motion for a preliminary injunction (Dkt. #11) is denied.

Defendants' motion to dismiss the complaint (Dkt. #17) is granted, and the complaint is dismissed without prejudice. If defendants fail either to: (1) enact a comprehensive zoning plan within ninety (90) days of the date of issuance of this Decision and Order, or (2) render a decision

on plaintiff's application for a hardship exception within ninety (90) days of its filing, plaintiff may refile its complaint and seek injunctive relief in this Court.[7]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 11, 2006.

---

[7]Both sides have submitted materials outside the pleadings in connection with the pending motions. To the extent that I have considered those materials, I have done so only in connection with the preliminary injunction motion and the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). I have not considered those materials in deciding the motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Township of West Orange v. Whitman*, 8 F.Supp.2d 408, 414 (D.N.J. 1998) ("the Court will exclude from its consideration of the motions to dismiss matters outside the pleadings that have been submitted in connection with the motion for a preliminary injunction").